ELLSWORTH C. SMITH, Respondent, *v.* AMOS S. CHESEBROUGH et al., Respondents, and WILLIAM CRANSTOUN, as Executor of and Trustee under the Will of NICHOLAS H. CHESEBROUGH, Deceased, Appellant.

WILL — WHEN VOID INTERMEDIATE TRUST, CREATED BY CODICIL, MAY BE EXPUNGED WITHOUT CHANGING TESTATOR'S PLAN FOR DISPOSITION OF HIS PROPERTY, THE WILL MUST BE SUSTAINED. Where a testator devised and bequeathed his residuary estate to his executors in trust to pay the income thereof to his wife during her lifetime, with power to sell his real estate at any time during the trust at their discretion, and after her death to transfer the residuary estate to the designated trustees of a permanent trust, and thereafter, after the death of his wife, testator executed a codicil to his will, revoking the provisions therein contained for the benefit of his wife, and directing his executors to hold the residuary estate and invest and reinvest the income thereof until the expiration of two years after his death and then to transfer the residuary estate and the accumulated income thereof to the trustees of the permanent trust, neither the will and the provisions thereof granting the power of sale, nor the provisions creating the permanent trust, are revoked or rendered invalid by the codicil, notwithstanding the direction to hold and invest both principal and income of the residuary estate for the definite period of two years after testator's death before transferring the same to the permanent trustees constituted an unlawful suspension of the power of alienation and provided for the unlawful accumulation of income in vio-

lation of the statute (Real Property Law, §§ 32 and 51; L. 1896, ch. 547), since the invalid provisions of the codicil affected neither the power of sale nor the existence of the permanent trust, but only the time of the inception of the trust, and such provisions can be expunged without making any change in the testator's plan for the disposition of his residuary estate, except that the trustees of the permanent trust take possession thereof upon the testator's death instead of two years later.

Smith v. Chesebrough, 82 App. Div. 578, reversed.

(Argued October 6, 1903; decided October 30, 1903.)

APPEAL, by permission, from an order of the Appellate Division of the Supreme Court in the second judicial department, entered May 1, 1903, which affirmed an interlocutory judgment in favor of plaintiff and defendants, respondents, entered upon a decision of the court on trial at Special Term.

The following are the questions certified : " I. Was not a valid power to sell the real property described in the complaint given to appellant by his testator, Nicholas H. Chesebrough ?

" II. Did said Chesebrough's testamentary disposition of said real property illegally suspend the power of alienation thereof ?

" III. Should not said Chesebrough's invalid direction to accumulate the rents, interest and income be eliminated by the court and the rest of his testamentary plan upheld ? "

The nature of the action and the facts, so far as material, are stated in the opinion.

*P. Harwood Vernon* for appellant. The second question, to wit: " Did said Chesebrough's testamentary disposition of said real property illegally suspend the power of alienation thereof ? " should be answered in the negative. (*Henderson* v. *Henderson*, 113 N. Y. 1.) If the power of sale was not revoked by the codicil and if the testator intended that it should be exercised, and the condition of his estate required its exercise, then the real estate was thereby equitably converted even if the power was not in terms imperative. (*Fraser* v. *Trustees*, 124 N. Y. 479 ; *Salisbury* v. *Slade*, 160 N. Y. 278, 289 ; *Asche* v. *Asche*, 113 N. Y. 232 ; *Delafield* v.

*Barlow,* 107 N. Y. 535 ; *Lent* v. *Howard,* 89 N. Y. 169 ; *Powers* v. *Cassidy,* 79 N. Y. 602 ; *Dodge* v. *Pond,* 23 N. Y. 69 ; *Wurt* v. *Page,* 4 C. E. Green, 375 ; *Crane* v. *Bolles,* 4 Dick. 373 ; *Roy* v. *Moore,* 2 Dick. 356.) Even if the power of sale given by the will was revoked by the codicil the testator's testamentary scheme does not illegally suspend the power of alienation, as the estate given to the orphan asylum trustees was vested and, therefore, alienable. (*Steinway* v. *Steinway,* 163 N. Y. 163 ; *Murphy* v. *Whitney,* 140 N. Y. 541 ; *Smith* v. *Edwards,* 88 N. Y. 102 ; *Selden* v. *Pringle,* 17 Barb. 465 ; *Warner* v. *Durant,* 76 N. Y. 133 ; *Campbell* v. *Stokes,* 142 N. Y. 23 ; *Levy* v. *Levy,* 79 Hun, 290 ; *Kilpatrick* v. *Barron,* 125 N. Y. 751.) The third question, viz. : "Should not said Chesebrough's invalid direction to accumulate the rents, interest and income be eliminated by the court and the rest of his testamentary plan upheld?" should be answered in the affirmative, because although a valid will is necessary, as claimed by the plaintiff, to withhold the real estate of a decedent from his heirs at law, yet when a will has been duly executed and the testator's object is worthy, it is the duty of the court to sustain the will as far as possible and to cut out invalid provisions. (*Kane* v. *Gott,* 24 Wend. 641 ; *Henderson* v. *Henderson,* 113 N. Y. 1 ; *Greene* v. *Greene,* 125 N. Y. 506 ; *Kalish* v. *Kalish,* 166 N. Y. 368, 375 ; *Hascall* v. *King,* 162 N. Y. 134.) The gift to the persons named in the testator's will for the purpose of founding an orphan asylum is not only valid in New Jersey, but also in New York, such a gift being no longer invalid in this state, because the beneficiaries of the charity are indefinite, or because a trust in perpetuity is created. (L. 1893, ch. 701 ; *Allen* v. *Stevens,* 161 N. Y. 122 ; *Cross* v. *U. S. T. Co.,* 131 N. Y. 330 ; *Hope* v. *Brewer,* 136 N. Y. 126.)

*Paul Eugene Jones* for plaintiff, respondent. The rights of plaintiff are to be determined as of the day of the death of Nicholas H. Chesebrough. On that day the title to his New York real estate vested in his heirs at law, and the possession

of that real estate can be withheld from the heirs only by one claiming under a valid trust, power in trust or a remainder validly limited. (*Tilden* v. *Green*, 130 N. Y. 29 ; *Dammert* v. *Osborn*, 140 N. Y. 30 ; *Haynes* v. *Sherman*, 117 N. Y. 433 ; *Cochrane* v. *Schell*, 140 N. Y. 516.) Even if the trust, upon which the trustees of the Chesebrough Protestant Orphan Asylum are to hold the New York real estate when it vests in their possession at the end of the term of two years, is valid, still, if the power of alienation were illegally suspended prior to that time, then the future estate for charitable purposes was "void in its creation." (5 Am. & Eng. Ency. of Law [2d ed.], 902 ; 1 Fearne on Remainders [4th Am. ed.], 425 ; *Warren* v. *Durant*, 76 N. Y. 133 ; *Tilden* v. *Green*, 130 N. Y. 29 ; *Cruikshank* v. *Home for Friendless*, 113 N. Y. 337 ; *Urbauer* v. *Cranstoun*, 60 App. Div. 51 ; *Booth* v. *Baptist Church*, 126 N. Y. 215 ; *Garvey* v. *McDevitt*, 72 N. Y. 556 ; *Kilpatrick* v. *Barron*, 125 N. Y. 751 ; 2 Perry on Trusts [5th ed.], § 783 ; *Kirsch* v. *Tozier*, 143 N. Y. 390 ; *Waterman* v. *Webster*, 108 N. Y. 157 ; *Dammert* v. *Osborn*, 140 N. Y. 30.) The only gift for the maintenance of the orphan asylum was of a fund to be illegally accumulated, and the gift falls with the direction for illegal accumulation. (*Rice* v. *Barrett*, 102 N. Y. 161.)

WERNER, J. This is an action for the partition of certain real estate described in the complaint, situate in the counties of New York and Richmond in this state, and of which Dr. Nicholas H. Chesebrough, a resident of the state of New Jersey, died seized on April 6th, 1899. The plaintiff and certain of the defendants, who are collateral relatives and heirs at law of the late Dr. Chesebrough, assert ownership to this real estate by reason of the alleged partial intestacy of the latter, while the defendant Cranstoun and others claim title thereto as trustees under his will and codicil, upon the construction of which the issue depends.

Dr. Chesebrough's will was executed in the state of New Jersey on the 23rd day of October, 1897. It first provided

for the payment of his debts and funeral expenses and then for certain specific legacies to relatives and various institutions. The residue of the estate he devised to his executors and to the survivor of them, in trust to hold the same, to collect the rents, income and interest therefrom, and to pay them over to the wife of the testator during her life. The executors were also given a power of sale, with discretion as to the time of its execution, and were directed to invest the proceeds of sales, and the interest and income therefrom to pay to the wife during her life.

The foregoing devise to the executors was limited upon the further trust that upon the death of the testator's wife, the residue of the estate and all moneys realized from the investment of the same then remaining, be conveyed and paid over to six designated trustees who were directed to found and erect in the town of Summit, in the state of New Jersey, an institution to be known as "The Chesebrough Protestant Orphan Asylum." The specific directions which relate to the establishment and execution of this ultimate trust are not material to this discussion, but it may be stated in passing that they are concededly valid under the laws of New Jersey, and would be valid in this state if they were to be executed here. (L. 1893, ch. 701; *Allen* v. *Stevens*, 161 N. Y. 122.)

In February, 1899, the testator executed a codicil in which he made certain changes in specific bequests, revoked the provision for his wife, who had died after the execution of the will, and then directed his surviving executor to invest the net rents, interest and income to be collected by him in safe securities or to deposit the same in bank so as to draw interest until the expiration of two years after testator's decease, and at that time, instead of after the death of testator's wife, " to assign, transfer, convey and pay over " the residue of the estate and all moneys realized from the investment of the same, or of the rents, issues and income thereof, to the six designated trustees for the purposes of the ultimate trust above referred to. In all other respects the original will was ratified and confirmed.

The courts below have held that the power of sale given by the will was revoked by the codicil, and that the direction to the executor in the latter instrument to hold and invest both principal and income for a definite period of two years after testator's death before transferring the same to the ultimate trustees constituted an unlawful suspension of the power of alienation under section 32 of the Real Property Law, which invalidated the will and vested the title to the premises described in the complaint in the plaintiff and the other heirs at law of the testator.

We are unable to concur in that view of the case. While the codicil does direct the surviving executor to hold and invest both principal and income of the estate for a definite period fixed by years instead of lives, and does, therefore, unlawfully suspend the power of alienation and provide for the unlawful accumulation of income (Secs. 32 and 51, Real Property Law), it does not follow that the will must fail altogether. If the invalid parts of the codicil can be expunged without essentially changing or destroying the testator's general testamentary scheme, the valid parts of the will should be upheld under the rule applied by this court in the case of *Kalish* v. *Kalish* (166 N. Y. 377) and in many other cases there cited. In the *Kalish* case we said: "It is axiomatic that courts cannot make new wills for testators who have failed to make valid wills for themselves. While recognizing the force of this truth, courts have from the earliest times been compelled to choose between the alternatives of setting aside certain wills altogether, or of cutting out simply their void provisions. This necessity has led to the rule which is now firmly established in this state, that when the several parts of a will are so intermingled or interdependent that the bad cannot be separated from the good, the will must fail altogether; but when it is possible to cut out the invalid provisions, so as to leave intact the parts that are valid, and to preserve the general plan of the testator, such a construction will be adopted as will prevent intestacy, either partial or total, as the case may be."

A brief analysis of the will and codicil before us will suffice to disclose the peculiar application of this general rule to the case at bar. In the original will there were, *first*, the specific legacies to various persons and institutions; *second*, the life estate of the testator's wife ; *third*, the ultimate trust in the six named trustees for the orphan asylum to be founded. The only relation that the life estate and the ultimate trust bore to each other was that the execution of the latter was to await the termination of the former. The power of sale, although related to each of these estates, is not dependent upon either of them. The direction to sell is peremptory, but the time of its execution is discretionary, so that it clearly survived the life estate. The testamentary scheme of the original will was, therefore, indisputably valid.

The only changes sought to be effected by the codicil were, *first*, the elimination of the life estate, the occasion for which had passed with the death of the testator's wife, and, *second*, the postponement until two years after the testator's death of the physical transfer of the residuary estate and its accumulations to the ultimate trustees. Under the original will the estate devised to the ultimate trustees was a vested remainder, the possession and enjoyment of which depended upon the duration of the life estate of the testator's wife. The ultimate trust was not revoked by the codicil, and the nature of the estate devised to the ultimate trustees was not changed, but the testator made an attempt to postpone the enjoyment thereof which was in contravention of the statute and, therefore, void. By taking out of the codicil the invalid provision for postponement, the only change in the testator's plan for the disposition of his residuary estate is that the physical possession of the remainder is accelerated so as to take effect upon the testator's death instead of two years later. In all other respects the testamentary scheme is not only essentially but literally preserved. By expunging the invalid part of the codicil the testator's partial intestacy is avoided and the real substance of his will is effectuated in its entirety.

The case of *Garvey* v. *McDevitt* (72 N. Y. 556), relied

upon by the respondents, seems to us clearly distinguishable from the case at bar. In the *Garvey* case the trust was held to have been void in its creation as it could not have been valid without creating an unlawful suspension of the power of alienation during the trust term of four years. In the case at bar we have a trust valid in its inception and remaining so after the excision of the invalid directions in the codicil.

The first, third and fourth questions certified to us are answered categorically in the affirmative. The second certified question is answered in the affirmative as qualified and explained in the opinion. These answers require a reversal of the order and interlocutory judgment appealed from, the dismissal of the complaint, with costs, and final judgment for the appellant in accordance with the foregoing views, with costs in all courts.

PARKER, Ch. J., O'BRIEN, BARTLETT, MARTIN, VANN and CULLEN, JJ., concur.

Order and judgment reversed, etc.