(121 App. Div. 531.)

STEWART et al. v. WOOLLEY et al.

(Supreme Court, Appellate Division, Second Department. October 4, 1907.)

1. WILLS—ESTATES IN TRUST AND POWERS.

Testator devised certain of his real property to his executors to take charge of and sell the same at such time within five years after his death as they might be able to obtain $50,000 therefor, and immediately on the expiration of the five years, if the premises were unsold, to sell the same as in their discretion might seem best, and, until the sale, to receive the rents and profits, to pay the taxes, and to invest the balance, the proceeds of such sale and the accumulated rents and profits to be distributed as therein provided to his children and other beneficiaries. *Held*, that the intendment of testator was an express trust in the executors, and not a power in trust.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 49, Wills, §§ 1579–1581.]

2. PERPETUITIES—SUSPENSION OF ABSOLUTE POWER OF ALIENATION.

An express trust created in executors to sell real property at such time within five years after testator's death as they might be able to obtain $50,000 therefor, and on the expiration of that period without sale to sell as in their discretion they might deem best, unlawfully suspends the absolute power of alienation.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 39, Perpetuities, §§ 46, 47, 52, 53.]

3. WILLS—DESIGNATION OF LEGATEES—RELIGIOUS SOCIETIES.

Under a will providing for the distribution of the residue of a fund created by a sale of certain of testator's real property and the rents and profits thereof among such churches as his executors or a majority of them "then" acting should in their discretion deem most deserving, such selection cannot be made at testator's death, but only after the sale.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 49, Wills, §§ 1116–1127.]

4. PERPETUITIES—SUSPENSION OF ABSOLUTE POWER OF ALIENATION.

An express trust to receive and accumulate rents and profits of certain of testator's real property until a sale thereof, the sale to be made at such time within five years as a certain price could be obtained, is void.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 39, Perpetuities, §§ 67–73.]

5. WILLS—CONSTRUCTION—VOID IN PART—EFFECT.

Testator devised real property to his executors, to take charge of and sell the same at such time within five years after his death as they might be able to obtain $50,000 therefor, and immediately on the expiration of the five years, if the premises were unsold, to sell the same as in their discretion might seem best, and to receive the rents and profits, to pay the taxes, and invest the balance until the premises should be so sold. He then directed that the proceeds of a sale, together with the accumulated rents, should be distributed, a certain sum each to a daughter and son, and a like sum in trust, the balance to be distributed to churches as in the discretion of the executors might be deemed most deserving. *Held* that, notwithstanding the invalidity of the attempted suspension of the power of alienation until the price named could be obtained and the direction for the accumulation of rents, yet the same were not so interdependent with the scheme of distribution that that also failed, but that the power of sale and scheme of distribution remained undefeated.

6. SAME—TRUSTS—CONSTRUCTION.

Under a will providing for the sale of certain of testator's real property and the accumulation of rents and profits until such sale, when the purchase money, together with rents and profits, was to be distributed, a certain sum each to a daughter and son, and a like sum in trust for another son for life, remainder to his children, the balance to be distributed to churches as therein prescribed, if the sale did not realize a sum sufficient to satisfy the provision for testator's children, the rents could be taken to an extent necessary to make up that sum, the excess to go to the churches.

7. PERPETUITIES—ACCUMULATIONS—DISPOSITION IN TRUST—VALIDITY.

A direction that the share of a certain child of an accumulation of rents and profits of land be held in trust for his life, remainder to his children, is void.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 39, Perpetuities, §§ 67–73.]

Appeal from Special Term, Kings County.

Action by Sarah E. Stewart, individually and as executrix of and trustee under the will of Edward A. Woolley, deceased, against John H. Woolley, individually and as executor of and trustee under that will, and George E. Woolley, individually and as administrator of the estate of George W. Woolley, deceased, and another. From the judgment, Sarah E. Stewart and George E. Woolley appeal. Modified and affirmed.

The action is for construction of a part of the will of Edward A. Woolley, admitted to probate on October 12, 1899. That part provides:

"I give and devise to my executors hereinafter named or such of them as shall qualify and the survivors or survivor of them and his or her successors the house and lot of land situate on the northeasterly corner of Fulton street and Ashland Place (late Raymond street) and also the house and lot of land in the rear thereof known as number 59 Ashland Place in the city of Brooklyn in trust, to receive and take charge of the same and to sell and dispose of the same at such time within five years after my decease as they may be able to obtain the sum of fifty thousand dollars in the aggregate therefor, and immediately upon the expiration of five years from the date of my decease, if said premises remain so long unsold, to sell and dispose of the same separately or together, either at public or private sale, at such price and upon such terms as

they in their discretion shall deem most beneficial and to execute and deliver good and valid deeds of conveyance therefor, and until said premises shall be sold upon the further trust to collect and receive the rents, issues and profits thereof, to pay the taxes, water-rates and assessments that may be imposed on said premises, premiums of insurance and the interest on the mortgage (if any) thereon, and to keep the same in good repair and to invest and keep invested the balance of said rents, issues and profits until said premises shall be sold as aforesaid, when the purchase money received by them from the sale of said premises, together with the said rents, issues and profits and the accumulations thereof, shall be paid and distributed by them as follows:—Ten thousand dollars thereof to my son John H. Woolley. Ten thousand dollars thereof to my daughter, Sarah E. Stewart. Ten thousand dollars thereof to be retained by my executors hereinafter named or such of them as shall qualify and the survivors or survivor of them and his or her successors until the death of my son George E. Woolley, in trust for the following uses and purposes, to wit: to invest and keep the same invested in good and sufficient securities and to apply the interest and income thereof towards the payment of the interest, taxes, assessments, water-rates, premium of insurance and necessary repairs upon the ten houses on Fourth Avenue devised to my executors under the clause of this will; any balance to be paid to my said son George E. Woolley, during the term of his life in quarterly payments; in case the said rents, issues and profits of said premises shall be insufficient to pay said taxes, assessments, water-rates, insurance and repairs.

"In case the rents, issues, and profits arising out of the said premises so devised to my executors under said clause of this, my will, together with the interest and income out of said trust fund aforesaid shall be insufficient to pay and discharge the taxes, assessments, water rates, insurance and all necessary repairs to said premises then I hereby direct my executors to apply so much of the principal of said trust fund from time to time as shall be necessary to carry out said trust.

"Upon the death of my said son George E. Woolley, if there be any of said trust funds remaining in their hands, then I direct my executors to pay and distribute the same among the children of said George E. Woolley, share and share alike.

"The balance or residue of the proceeds of the sale of premises corner of Raymond street and Fulton and Ashland place, city of Brooklyn, to be distributed to and amongst such Free Protestant Church and Evangelical Protestant Churches in sums not to exceed five hundred dollars to any one church, as my said executors or the majority of them then acting shall in their discretion deem most deserving and in need thereof, but no church shall be selected to receive any benefit under this provision of my will unless the same shall be a free church, where no charge is made or fee is required to be paid to occupy the pews or sittings therein during divine services."

Argued before HIRSCHBERG, P. J., and WOODWARD, JENKS, HOOKER, and MILLER, JJ.

William Sullivan, for appellant.

Melville J. France, for appellant George E. Woolley.

A. F. Van Thun, Jr., for respondent John H. Woolley.

George Fielder, for respondent the Attorney General of the state of New York.

JENKS, J. I think that the intendment of the testator was an express trust in the executors, not a power in trust. Spitzer v. Spitzer, 38 App. Div. 438, 56 N. Y. Supp. 470; Hubbard v. Housley, 43 App. Div. 129, 59 N. Y. Supp. 392, affirmed 160 N. Y. 688, 55 N. E. 1096; Staples v. Hawes, 39 App. Div. 548, 57 N. Y. Supp. 452. I think that the provision empowering the executors to sell "at such time within 5 years after my decease as they may be able to obtain the sum of

$50,000 in the aggregate therefor" is not merely advisory, but is a limitation so that they have no authority to sell during that period for a less price. Fowler on Real Property Law of the State of New York (citing authorities) writes:

"While a peremptory power of sale does not per se suspend the power of alienation, a power to sell and distribute does not necessarily relieve a trust limitation, otherwise invalid, from the effect of suspending the power of alienation. So, if the execution of even a power of sale is, by any limitation, unduly postponed, such limitation violates the rule against a perpetuity, and is void, unless the power is of such a nature as to be presently extinguished or merged. Where the power may be released by a person entirely sui juris, it would seem not to create a perpetuity."

If the power of alienation was suspended for a term not measured by lives, then the provision is void. Brown v. Quintard, 177 N. Y. 75–82, 69 N. E. 225; McGuire v. McGuire, 80 App. Div. 63, 80 N. Y. Supp. 497. It is bad if at the time of the creation of the trust there was a possibility that there could be no sale for the period of five years. Nelson, C. J., in Hawley v. James, 16 Wend. 61–120, says:

"Now, if in either aspect the limitation of the estate might suspend the power of alienation beyond the time allowed by the law, it will be impossible to sustain it, because the rule is well established that a limitation which by possibility may create such a suspension is void."

See, too, Amory v. Lord, 9 N. Y. 403, 415, citing Hawley v. James, supra; Herzog v. Title Guarantee & Trust Co., 177 N. Y. 86, 99, 69 N. E. 283, 67 L. R. A. 146; Trowbridge v. Metcalf, 5 App. Div. 318, 39 N. Y. Supp. 241, affirmed Trowbridge v. Trowbridge, 158 N. Y. 682, 52 N. E. 1126. In Spitzer v. Spitzer, supra, this court, per Cullen, J., said:

"The will directs that the executor shall sell, as soon as possible after the testator's death and within two years from the admission of her will to probate, for the best price that can be realized, but for not less than $18,500 without the written consent of the testator's sons. It seems to us that this does not violate the statute against perpetuities. The trust is to continue until the time of sale. If the authority to sell was unqualifiedly limited by the provision that the executor should obtain the sum of $18,500 for the property, the trust would be illegal because it might be that the executor never could obtain that price."

See, too, Stewart v. Hamilton, 37 Hun, 19–21.

The learned Special Term was moved to pronounce the provision valid by the consideration that a price well within the fair market value of the thing to be sold is no more than is implied in all powers of sale, and there was no attempt to show that the realty could not fetch the price named within five years. But the fact that normally a voluntary vendor does not sell at a sacrifice, if in any way germane to the question before us, could indicate nothing more than that this testator thought that the sum which he named might be realized within the five years. And the implied restriction upon an agent or a trustee that he should not make a voluntary sale at a foolish price is quite different from an express prohibition that he should sell only at a prescribed price. The validity of the provision, as I have shown, is not to be determined by probabilities or possibilities of a sale, but the possibility that there could not be a sale.

I am of opinion that the power of sale cannot be defeated or annulled. A specified part of the proceeds of a sale is to be held by the executors in trust for the lifetime of the testator's son George. Hence there cannot be a present right in existence to dispose of the entire interest. Garvey v. McDevitt, 72 N. Y. 556. In addition, after the gifts to his children John and Sarah, and the making of the said trust for the life of George, any residue of the sale is to be distributed "amongst such Free Protestant Church and Evangelical Protestant Churches in sums not to exceed five hundred dollars to any one church, as my said executors or the majority of them then acting shall in their discretion deem most deserving and in need thereof, but no church shall be selected to receive any benefit under this provision of my will unless the same shall be a free church, where no charge is made or fee is required to be paid to occupy the pews or sittings therein during divine services." Now, I do not find that there is any religious denomination known or described even approximately as the "Free Protestant Church." There is a religious body known as the "Evangelical Church," but there is doubt whether the testator by the expression "Evangelical" intended any more definite designation than those churches which conformed to the principles of the gospel of Jesus Christ. Century Dictionary. It is to be noted that there is no territorial limitation whatever, but, for aught expressed, all churches within those terms may be selected by the executors. There is serious question under the rule of Read v. Williams, 125 N. Y. 560, 26 N. E. 730, 21 Am. St. Rep. 748, whether this power is not too indefinite. However this may be, this residue was not given to any church or churches which could be selected at the time of the death of the testator, for only after the sale was the residue to be given to such churches "as my said executors or the majority of them then acting shall in their discretion deem most deserving and in need thereof." It seems clear that the executors cannot now exercise such a discretion which must regard the deserts and needs of particular churches, which at the time of the distribution may then show themselves worthy and free churches.

The scheme of the part of the will under consideration contemplated the creation of a fund which required the sale of the realty specified. It is true that the power of sale was limited for a period by the provision in question, but at the expiry of that period the power of sale was imperative. All agree that the provision for accumulations meanwhile is bad. The question is whether the provisions are so articulated with the scheme that the scheme itself must fail. It we eliminate the void provisions as to the sale (that for accumulations is but incidental to it), we cut off a provision designed not to defer the scheme, but to secure a particular price. Whenever that price could be obtained, the scheme of distribution was to be carried out. It was not essential to the scheme that a particular price be obtained, inasmuch as there is no restriction as to price after the lapse of five years. Elimination of the void provision leaves intact both the imperative power of sale and the plan of distribution. If we uphold the scheme, aside from the void provisions, we but now make possible the plan the testator intended should become effective immediately within five years if the

fixed price was realized, and, in any event, upon the lapse of that period. We write, then, no new will. We but possibly accelerate the operation of testator's dominant purpose. The disposition of the fund to be realized from a sale does not offend the law. The trust in $10,000 thereof is measured by the life of the son George. The other parts thereof are to be distributed outright, and the disposition of the residue, if any, may be sustained. Under the doctrine of Kalish v. Kalish, 166 N. Y. 368, 372, 59 N. E. 917, Haxtun v. Corse, 2 Barb. Ch. 506, and Van Vechten v. Van Veghten, 8 Paige, 104, I think that this should be the disposition of this case. My view constrains me to differ and to agree with the learned Special Term. First. I differ in that I think that the limitation of the power of sale for five years is bad. Second. I agree that the direction for the accumulation of the net rents and profits until the sale is bad. Third. I agree that, if the sale does not realize the sum of $30,000, the rents are given to the absolute distributees to the extent necessary to make the fund $30,000, and further I think that an excess of rents over that sum is applicable to the provision for the churches. Fourth. I agree that the one-third of that contribution which is directed to be held in trust for the life of George E. Woolley is void. Fifth. In other respects I agree.

I advise that the judgment, as thus modified, should be affirmed, with costs to all parties payable out of the estate. All concur.