HARRIET A. BRADY and WILLIAM G. HANSON, Plaintiffs, *v.* RUTH HANSON et al., Defendants.

(Supreme Court, New York Special Term, June, 1910.)

Partition — Right and propriety — Estates partible — Converted realty.
Suspension of power of alienation — Conditions determining validity of suspension — Necessity that suspension period should be measured by human lives.
Trusts — Construction of express trusts — Partial validity.

> Where a testator gives to his executors real property, to manage and control the same for the period of one year after the testator's death and thereafter to convert ino money and distribute to the legatees and beneficiaries named in the will, the provision requiring the executors to retain the property for one year is invalid; but where the testator's entire scheme can be carried out by disregarding such provision, except as his purposes may be accelerated thereby, and where, in consequence of the period of one year having already actually expired at the time of the present adjudication, his purposes would be carried out in their entirety by such a decision, such provision will be eliminated and the other provisions of the will will be observed.
>
> Since the direction to the executors to sell is mandatory, an equitable conversion of the testator's real property was effected, and an action will not lie for the partition thereof.

ACTION for partition. The opinion states the case.

Kurzman & Frankenheimer (Abraham L. Gutman, of counsel), for plaintiffs.

Kellogg & Rose (Franklin H. Nevins, of counsel), for defendant Amelia E. Upham, individually and as executrix of the estate of Joseph G. Hanson, deceased, and specially upon the trial of the action for defendants Emma F. Hill, Joseph H. Hanson, Elizabeth Hanson, wife of Joseph H. Hanson, Alexander Hill, and Emma F. Hill.

William K. Hartpence, guardian *ad litem* for Charles Ephraim Hanson Upham and Frances Alberta Upham, infant defendants.

James O. Clark, for defendant Adeline A. Haviland.

Juliana Gallwitz (Charles Hill, of counsel), for defendant Abbie Hanson.

Walter B. Walker, guardian *ad litem* for Daisy Minnie Ruth Hanson and Wyman Dewey Hanson, infant defend-. ants.

GIEGERICH, J.   The plaintiffs, as heirs at law of Joseph G. Hanson, deceased, bring this action for the partition of the premises known by the number 346 Bleecker street, in the borough of Manhattan, New York city, of which the said decedent died seized on or about August 1, 1903, in the city of Bayonne, county of Hudson, State of New Jersey, leaving him surviving no widow and the following heirs at law: Harriet A. Brady, one of the plaintiffs, a child; William G. Hanson, one of the plaintiffs, a grandchild, a son of James E. Hanson, a son who predeceased Joseph G. Hanson; Joseph H. Hanson, defendant, a child; Charles W. Hanson, defendant, a child; Amelia E. Upham, defendant, a child; Emma F. Hill, defendant, a grandchild, daughter of John L. Hanson, a son who predeceased Joseph G. Hanson; Oscar Hanson, since deceased, son of James E. Hanson. Oscar Hanson died subsequently to the death of Joseph G. Hanson, but prior to the bringing of this action, and left him surviving no heirs or next of kin other than his mother, now Adeline Haviland, and William G. Hanson, his brother; James E. Hanson, son of and who predeceased Joseph G. Hanson, leaving him surviving a widow, now Adeline Haviland, defendant, and two sons, William G. Hanson and Oscar Hanson, already mentioned. The said Joseph G. Hanson, deceased, left a last will and testament, dated October 10, 1901, which was admitted to probate by the surrogate of Hudson county, State of New Jersey. Such will was also duly admitted to probate as a will of real and personal property by the Surrogate's Court of New York on the 28th day of June, 1907. By his will the testator, in the first clause, directs the payment of his debts and funeral expenses.

By the second clause he gives and bequeaths all his wearing apparel to the several legatees and beneficiaries thereinafter named, to be divided equally among them, share and share alike. The will further provides: "*Third.* I do give and bequeath to my said executor and executrix, or the survivor of them, my house and lot known as and situated at 346 Bleecker street, in the borough of Manhattan, city of New York, county and State of New York, in trust to take possession and full charge and control of the same immediately after my decease, and to collect the rents and income thereof and keep property in proper repair, pay the taxes, insurance and all other necessary expenses thereof for the period of one (1) year, and then, after the relapse of one (1) year after the date of my death, to sell the same at private sale for the very best price that can be obtained therefor, and make conveyance thereof and give good title thereto, and turn said property into cash so as to be held in trust by my said executor and executrix, and thereafter the said cash to be divided and distributed to my legatees and beneficiaries as hereinafter directed. *Fourth.* The proceeds from the sale aforesaid and from all moneys in the hands of my said executor and executrix after the said sale shall be divided into eight (8) equal parts or shares as follows, and shall be paid over as follows: Two (2) equal eighth parts or shares thereof to my son Charles W. Hanson, to whom I hereby give the same absolutely and forever. One equal eighth part or share to be divided equally to my grandchildren Ethel Hanson and Abbie Hanson, to whom I hereby give the same absolutely and forever. One equal eighth part or share to my daughter Harriet A. Brady, to whom I hereby give the same absolutely and forever. One equal eighth part or share to the widow of my late son John L. Hanson, to whom I hereby give the same absolutely and forever. One equal eighth share to the children of my son James E. Hanson, deceased, such part or share to be divided equally between said children, and to whom I hereby give said share absolutely and forever. One equal eighth share to my daughter Amelia E. Upham, to whom I hereby give the same absolutely and forever. One equal eighth share to my son Joseph

H. Hanson, to whom I hereby give the same absolutely and forever. I hereby nominate, constitute and appoint my son Charles W. Hanson and my daughter Amelia E. Upham to be the executor and executrix of this my last will and testament and to qualify without bond." The persons so named as executors qualified on June 28, 1907. By the fifth clause the testator directs that his son Joseph H. Hanson and his daughter Harriet A. Brady shall in no way or manner interfere with his executor and executrix in the sale of the said real estate. On June 3, 1902, the testator executed a codicil by which he directed and authorized the executor and executrix of his will above named, after the sale of his said Bleecker street property, to place the share which he bequeathed to his daughter Harriet A. Brady in trust at interest for her during her life, and at her death to divide the said share equally between his grandchildren Charles Ephraim Hanson Upham and Frances Alberta Upham. The theory of the plaintiff's action is that the third clause of the will above quoted unlawfully suspends the power of alienation of the property for the fixed period of one year in contravention of section 42 of the Real Property Law (Cons. Laws, Laws of 1909, chap. 52, which was § 32 of the former Real Property Law [Laws of 1896, chap. 5¬7], and was originally revised from R. S., pt. 1, tit. 2, §§ 14, 16), and hence the will is void. The defendant Amelia E. Upham, individually and as surviving executrix of the estate of John G. Hanson, deceased, and the guardian *ad litem* of the infant defendants Charles Ephraim Hanson Upham and Frances Alberta Upham, as well as the other parties defendant, claim, on the other hand, that, even assuming that the clause in question is void, still it may be disregarded and the will stand in all other respects. After the action was commenced and in order to adjust the differences between the parties litigant and avoid the expense incident to litigation and to admit of the immediate closing up of the estate, parties agreed upon a compromise, the terms of which are embodied in a written agreement dated the 4th day of April, 1907. The agreement, among other things, provided that instead of the interests in remainder the Upham infants

should receive a certain specified sum of money, to which all of the parties interested in the estate contributed as a part of the compromise. The agreement further provided that Mrs. Brady should receive her share of the estate, less her contribution to the fund for such minors, absolutely, instead of simply receiving a life interest therein. In other respects the agreement dividing the property stands upon the lines of the division set forth in the will. The agreement was executed by all the then parties to the action except the infant defendants, whose general guardians, however, executed the same in their behalf. The property was sold in pursuance of the terms of the agreement, but the purchaser refused to take title on the ground that the general guardians of the infants could not convey the interests of their wards, and that the title tendered was defective in that respect. After the agreement was executed and before the case was ready for trial, the defendant Charles W. Hanson, who was one of the sons of the testator and one of the executors of the will, died, leaving a widow and two minor children, Daisy Minnie Ruth Hanson and Wyman Dewey Hanson, and leave was granted by the court to serve a supplemental summons and complaint to bring them in as parties defendant, and a guardian *ad litem* was appointed for such two infants. All the parties to the action, including the guardians *ad litem* for the respective infant defendants, urge that the so-called compromise agreement be enforced and carried out. In support of such position it is argued that the action being in equity, to wit, a partition suit, the court, having acquired jurisdiction, should retain the action for the purpose of awarding such judgment as would be proper and equitable. 30 Cyc. 230, and citations. Before the court can consider the propriety of enforcing the compromise agreement by a judgment in this particular action it must determine the more substantial question whether it has the power to enforce it at all, and the answer to that question depends upon the solution of the only serious question in the case, namely, whether or not this real property or its proceeds was effectively disposed of by the will, for if the provisions of the will in so far as they relate to this property are valid as they were

written, or if they admit of substantial enforcement in spite of some invalid but unessential provision which can be disregarded without materially affecting the disposition which the testator intended to make of his property, then it is quite clear that the court cannot permit the parties, by agreement among themselves, radically to upset the testator's scheme, destroy the trust created in favor of Mrs. Brady and give her, at once and absolutely, a sum which the testator intended to be held and invested for her benefit during her life by trustees appointed by the will. The testator took great pains to provide that the principal of this fund should not come into Mrs. Brady's hands or under her control, but that it should be held and managed by others for her benefit, and if his will is valid his intentions in that regard must be respected by the court whatever the inclinations of the beneficiary or of the other legatees may be. Cuthbert v. Chauvet, 136 N. Y. 326. If the will is valid, therefore, it is of no importance to inquire whether or not the interests of the infant remaindermen have been adequately protected by the compromise agreement, because the proposed destruction of the trust in favor of Mrs. Brady is in itself sufficient to prevent the enforcement of that agreement. I am of the opinion that the testator has effectively disposed of this property or of its proceeds by his will and codicil. Of course the direction of the executors to hold the property for one year before selling it is invalid. Greene v. Greene, 125 N. Y. 506, 512; Smith v. Chesebrough, 176 id. 317, 322. But that direction may be disregarded without at all affecting the testamentary scheme. If the limitation thus ineffectually attempted to be put upon the alienation of the property be eliminated as one beyond the power of the testator to impose, the plan of the testator will be carried out in its entirety. Otherwise the whole testamentary scheme must be destroyed, the attempted disposition of the property held invalid and the heirs left to take the property by descent or to compromise their claims as they see fit, without regard to the testator's wishes, which have been expressed so clearly that there can be no room for doubt or dispute about them. I say that the testator's plan will be carried out in its entirety

because it happens that more than one year has already elapsed since the death of the testator. This circumstance cannot, of course, affect the determination of the question as to the validity of the will, which must be tested as of the date of the testator's death. But testing my conclusion by the consequences which it would have worked at that time it is apparent that the only change in the testator's plan which it could have effected would have been to permit a sale of the property a few months earlier, and consequently to permit the trust fund in favor of Mrs. Brady to be created a few months sooner. The legacies to the other legatees would not have been payable in any event until after that time. Code Civ. Pro., § 2721. In other words, as said by Jenks, J., in Stewart v. Woolley, 121 App. Div. 531, 537, we but *possibly* accelerate the testator's purpose in that respect. I am of the opinion, therefore, that this is a case in which the circumstances call strongly upon the court to effectuate the purposes of the testator, and that there is no insuperable difficulty in the way of the accomplishment of that result. That purpose must always be uppermost in the mind of the court in any case involving the testamentary disposition of property, and in the present case I think my conclusions are sufficiently sustained by the cases of Smith v. Chesebrough and Stewart v. Woolley, before cited. As the direction to sell was mandatory, an equitable conversion of the land has been effected, and the action for partition will not lie. Delafield v. Barlow, 107 N. Y. 535; Eisner v. Curiel, 2 App. Div. 522. The complaint must, therefore, be dismissed upon the merits, but without costs. The decision and judgment may be presented for settlement upon the usual notice.

Judgment accordingly.